SMITH *et al.* v. DAVID.

514

No. 7048.   MAY 16, 1929.

522

*T. M. Smith* and *Troutman & Troutman*, for plaintiffs in error.
*A. C. Corbett* and *A. W. White*, contra.

HINES, J. (After stating the foregoing facts.) The trial judge rendered final judgment, granting the relief prayed by the plaintiff, and denying that sought by the defendant and intervenor, upon the pleadings without the introduction of any evidence. This could only be done upon the theory and assumption that the facts pleaded by the defendant and intervenor were to be taken as true, and authorized the relief prayed by the plaintiff, and did not entitle the defendant and intervenor to the relief prayed by them. We think it clear that the trial judge did not undertake to pass upon disputed issues of fact, which under our system of jurisprudence can be only solved by a jury; but based his judgment upon the ground that, taking the facts pleaded by the defendant and intervenor as true, these facts demanded a finding in favor of the plaintiff and against the defendant and intervenor. This conclusively appears from recitals appearing in the judgment. One of these recitals is that it appears from the answer of Gillespie that he was not in a position to demand delivery of the deeds in question at the time this suit was filed. The other recital is that it appears from the amendment filed by the plaintiff and allowed on February 11, 1929, and from the answer of the defendant and intervenor to said amendment filed and allowed on February 13, 1929, that since this suit was filed and since the filing by Gillespie of his intervention, in which he seeks a decree of specific performance, Gillespie had permitted the property, which he was to convey to the plaintiff, to be sold under a foreclosure of a loan on said property, and had thereby put it out of his power to specifically perform on his part the alleged contract. So the main questions for decision are, first, whether Gillespie was not in a position to demand delivery of the deeds in question at the time the suit was filed; second, whether the sale of the property of Gillespie under a foreclosure of a loan on said property put it out of his power to specifically perform on his part the contract for exchange of properties between plaintiff and intervenor; and third, whether these things, if true, prevented Gillespie from seeking the relief

which he sought, and demanded a finding that the plaintiff was entitled to the relief which he prayed.

■ The court below held that it appears from the answer of Gillespie that he was not in position to demand the delivery of the deeds involved in this litigation at the time this suit was filed. Is this position sound? If the court, by the language "this suit," referred to the suit instituted by David, we do not think that it was incumbent upon Gillespie to show that at that time he was in position to demand delivery of these deeds. The contract of exchange was made on April 27, 1927, and the suit brought by David was filed on May 26, 1927. The attorney for David found certain objections to the title of Gillespie to the property he proposed to exchange with David, and these objections were submitted to the attorney for Gillespie on or about May 10, 1927. When time is not of the essence of the contract, if the vendor finds his title defective, or the vendee raises objections to his title, he is entitled to a reasonable time and opportunity to obtain a good and marketable title. 36 Cyc. 718 c. The general rule is that the vendor, bringing suit within a reasonable time, and using diligence in remedying the defects in his title, is allowed to perfect his title pending the suit. 36 Cyc. 719 (III). What is a reasonable time is a question of fact and not one of law.

On June 2, 1927, Smith filed his answer to the petition in this case. In it he admits that the attorney for plaintiff submitted a list of objections to the title of Gillespie on or about May 10, 1927; and he alleges that all objections had been removed except the ones assumed by plaintiff. On July 19, 1927, Gillespie filed his intervention seeking specific performance of this contract. In his intervention he alleges that the deeds executed by plaintiff and by him to the lands which they were exchanging under this contract were delivered to Smith to be held in escrow, and were to be delivered upon the happening of one condition, namely, that the title to the properties thus exchanged should be good and merchantable. He further alleges that before this suit was filed plaintiff called upon him and requested him to allow plaintiff to withdraw from said agreement to exchange said properties, and call the trade off, but that intervenor declined so to do. This was several weeks after the deeds were executed and delivered to Smith. At that time plaintiff made no complaint whatsoever as to the merchantability

of intervenor's title. He further alleges that the attorney for plaintiff submitted to his attorney a list of the objections which he found to the title of the property of intervenor; and that all of said objections were cleared up so as to render his title good and merchantable, except one frivolous and immaterial objection which did not affect the title to the property in any manner whatever, but was raised by plaintiff and his attorney purely for the purpose of defeating the exchange of said properties, as plaintiff had become dissatisfied, and not because of any defect in the title of intervenor. In these circumstances intervenor made a. demand upon plaintiff for a performance of the provisions imposed upon him by this contract, and for the completion of the transaction by delivery of the deeds. Plaintiff refused compliance with this demand. It does not appear from the pleadings of Smith and Gillespie that the latter was not in a position to demand a delivery of the deeds in question at the time his intervention was filed. If, before Gillespie filed his intervention for specific performance of this contract, he was able to deliver his land to plaintiff free from the defects in his title urged by plaintiff, and offered so to do upon compliance by plaintiff with his obligations under this contract, the obligations of both parties being concurrent and requiring concurrent performance, such offer and tender of the intervenor amounted to performance of the provisions of the contract imposed upon him, where plaintiff refused to accept such performance on his part. All that a party seeking specific performance of a contract for the exchange of lands is required to show is his ability to comply substantially with his contract in every part and as to all the property. Civil Code (1910), § 4638.

We come now to consider the alleged defects in the title of intervenor, which plaintiff asserts rendered him unable to convey a good and merchantable title, and which put it out of his power to demand the delivery of these deeds to the grantees therein. The things which plaintiff contends that the intervenor should have done, before the holder of the escrow deeds was authorized to deliver them, are (a) to show (there being nothing of record showing) payments reducing the first loan of $14,000 on the property of intervenor to $12,500; (b) to procure title from W. C. Foster, redeeming this property from a tax sale; (c) to explain the difference in the amount of the street-improvement lien which David

was to assume, the amount assumed being $879.91, and the amount of this lien shown on the record being $897.91; (d) payment of taxes for the year 1927; (e) an explanation of the interest of Kate Buchman in this property; and (f) removal of other objections found against the title by plaintiff's attorney. In the contract of exchange plaintiff assumed to pay $12,500 on the first loan on the property of intervenor, originally for $14,000, but which intervenor represented had been reduced to $12,500. The contention of plaintiff is that the record shows this first mortgage to be for $14,000, that there is nothing of record to show any payments of principal and interest reducing this loan to $12,500, and that for this reason intervenor should show the payments reducing this loan to the amount assumed by plaintiff. In their answer to the amendment to the petition filed on February 11, 1929, defendant and intervenor allege that it was never suggested by plaintiff or his attorney that any evidence be produced showing the payments which had been made on the principal and interest due on said loan. They further allege that all principal installments and all interest on said note which had accrued prior to the filing of this suit and prior to the execution of the deeds in question had been paid and satisfied, and that Gillespie had written evidence showing that the principal amount of said debt had been reduced to $12,500. In view of this allegation, it can not be held that the intervenor had failed to make a showing of payments of the principal and interest on said loan which would reduce it to $12,500. In the absence of any evidence tending to dispute this allegation (which was assumed to be true by the judge in rendering final judgment), it can not be said that this alleged defect in the title of the intervenor existed, especially when it was in the power of the plaintiff to ascertain from the lender the true amount due upon this loan.

In the contract of exchange the plaintiff assumed the payment of the taxes due on this property for the years 1924, 1925, and 1926 to the extent of $1,500. From this stipulation it is clearly implicable that the intervenor was to pay any excess due on these taxes after the application of this sum of $1,500 to their payment. It is insisted by plaintiff that while he assumed the payment of the taxes for 1924, it was not incumbent upon him to redeem this property from the tax sale made under the tax execution issued for the

taxes due on this property for 1924. It appears from the answer of defendant and intervenor that the holder of this tax title was willing for the owner to redeem the property by the payment of $507.03, that the intervenor had made an arrangement by which the holder of the tax title had made a quitclaim deed to a bank at the instance of the intervenor, and that this bank stood ready to execute a quitclaim deed to this property to the plaintiff or the intervenor upon the payment of this sum. As the plaintiff had to pay the taxes on this property for the year 1924, and as the amount necessary to redeem the property from the tax sale could be paid from the amount which plaintiff was to pay on account of the taxes due for the years mentioned, and as the intervenor proposed to plaintiff to have the bank make him a quitclaim deed on the payment by him from this tax money of an amount sufficient to redeem this land, this outstanding tax title was not such a defect in the title of intervenor as would relieve the plaintiff from compliance with the terms of the contract, and defeat the right of the intervenor to specific performance. 36 Cyc. 739 d.

The plaintiff assumed the payment of a street-improvement lien on the property of the intervenor. The amount which he assumed was $879.91. The record shows this lien outstanding for $897.91. The answer of the defendant and intervenor alleges that this difference was a typographical error in the scrivener who prepared the deed from intervenor to plaintiff. In these circumstances this small difference is not such a defect in the title of the intervenor as would defeat specific performance in his behalf. It can be taken care of in the final decree rendered in the case. The taxes on this property for the year 1927 had not been paid at the time intervenor filed his intervention in this case. The taxes on the property of the plaintiff had likewise not been paid for this year. These taxes could not have been discharged at the time this suit was instituted. They were not then due and payable. In the answer it is alleged that it was assumed by both parties that each would pay the taxes on his property when the same became payable in the following fall or winter. The failure of the intervenor to pay the taxes on his property was not urged in the objections which the attorney for plaintiff made to the title of the intervenor. Furthermore, the plaintiff had repudiated the contract before performance was due by the intervenor. This renunciation of the

contract by the plaintiff, before performance was due on the part of intervenor, excused the intervenor from offering to perform, and prevented his failure to perform from operating as a breach on his part. Accordingly intervenor is not prevented from maintaining suit for specific performance by such non-performance on his part after such renunciation. 6 Page on Contracts, § 3305. The other defects to the title of intervenor, set up by plaintiff, are utterly without merit, and will not defeat the right of the intervenor to ask specific performance of the contract.

■ Pending the suit an installment of principal and an installment of interest became due on the first loan on this property, which the plaintiff, under the contract of exchange, had assumed and agreed to pay. Plaintiff was notified that the lender would foreclose and sell this property unless these installments were paid. After being so notified, plaintiff declined to meet these payments. The lender then foreclosed and sold the property. It is insisted by the plaintiff that the intervenor in permitting this property to be thus sold put it out of his power to comply with the terms of the agreement in the oral contract of exchange of these properties, and that for this reason he can not now require specific performance at the hands of the plaintiff. Generally a plaintiff seeking specific performance must show performance, or ability, readiness, and willingness to perform all the provisions of the contract to be . performed by him; and relief will be denied a plaintiff who is unable to perform his part of the contract. 36 Cyc. 693, VI A. If the intervenor had made a sale of the absolute estate in this property to the plaintiff under an executory contract, the latter not assuming the payment of this loan, and thereafter sold or permitted the same to be sold under a foreclosure of the lien thereon, he could not enforce specific performance by the plaintiff of the contract of sale, and insist upon a conveyance to him of the property by the plaintiff or claim damages for failure to do so. But that is not this case. Under the contract the plaintiff assumed and agreed to pay the first loan upon this property. This agreement of the plaintiff did not become absolute and binding until the condition upon which the deeds, which the parties executed and deposited in escrow, had taken place; but when this condition was complied with, then the agreement of the plaintiff to pay this loan became absolute and binding. It is insisted, however, by counsel

528

for the plaintiff that no title to the property which intervenor was exchanging with plaintiff passed to the latter until these escrow deeds were delivered to the grantees therein, and that in consequence of this fact the loss arising from the sale of this property under the foreclosure of the prior lien placed thereon by a predecessor of the intervenor in title should fall on the intervenor and not on the plaintiff. Generally an escrow takes effect only from its delivery to the grantee therein named, and is only to be considered the deed of the party from that time. But this general rule does not apply when justice requires a resort to fiction. *Wellborn* v. *Weaver*, 17 Ga. 267, 274 (63 Am. D. 235). The general rule seems to be that an actual or manual delivery of an escrow is not necessary to invest the grantee with title, that a constructive delivery may be sufficient, and that the delivery is constructively made the moment the condition has been performed, or the event has happened, upon which the grantee is entitled to possession. It has been held that when a deed has been placed in the hands of a third person as an escrow, the grantor can not, after the performance of the act on which delivery is conditioned, prevent delivery from taking place by obtaining possession of the deed or by the destruction of it. 21 C. J. 888 (§ 34); Wymark's case, 5 Coke, 74a, 77, Reprint, 165; Hughes v. Thistlewood, 40 Kan. 232 (19 Pac. 629). So when the intervenor executed his deed to the plaintiff and deposited it with another as an escrow to be delivered to the plaintiff upon condition that the intervenor was able to make a good and merchantable title to the property therein conveyed, and it was shown that the intervenor had such title, or was able and willing to acquire it and convey it to the plaintiff, so as to vest in the latter a good and merchantable title, there was a constructive delivery of the deed to the grantee named therein, and the title to the property thereby conveyed passed to the latter. In these circumstances it was the duty of the plaintiff to pay the lien upon the property conveyed; and if he failed to do this, and the property was sold under a foreclosure of the prior lien, the loss must fall on the plaintiff, and not on the intervenor. The plaintiff can not rely upon a default which he himself has caused. 36 Cyc. 699, e; Clancy v. Flusky, 187 Ill. 605 (58 N. E. 594, 52 L. R. A. 277); Zempel v. Hughes, 235 Ill. 424 (5) (85 N. E. 641); Patterson v. Wilson, 19 Pa. 380; Town of Bristol v. Bristol &c.

Waterworks, 19 R. I. 413 (34 Atl. 359, 32 L. R. A. 740). If hardship falls upon the plaintiff from his failure to meet these installments of principal and interest, and he thus loses the property which he was to get under the contract of exchange, they result from his own conduct of which he can not complain. He will not be permitted to avail himself of impediments of his own creation. 5 Pomeroy's Eq. Jur. (4th ed.) §§ 2221, 2222.

■ The fourth headnote needs no elaboration.

■ A decree in equity may be molded in such a way as to give full protection to the rights of the parties. A judgment of specific performance in favor of the plaintiff may be conditioned on his performance of the covenants for which performance on his part is due, or will be due on performance by the defendant. 6 Page on Contracts, § 3368. Where there are encumbrances upon the property, they should be removed before the trial, or the court can provide for their payments in the decree, so as to protect the rights of the purchaser. *Willingham Loan & Trust Co.* v. *Moore,* supra.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*